The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.



**Russ Kendig
United States Bankruptcy Judge**

**Dated: 10:23 AM August 5, 2022**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 7 |
| GREAT COURT INSURANCE AGENCY, LLC, | CASE NO. 20-60633 |
| Debtor | JUDGE RUSS KENDIG |
| ANNE PIERO SILAGY, TRUSTEE, | |
| Plaintiff/Counter-Defendant, | ADVERSARY NO. 21-06033 |
| Vs. | **MEMORANDUM OF OPINION (NOT INTENDED FOR PUBLICATION)** |
| R.C. COOK INSURANCE AGENCY, INC. & RODNEY A. COOK, | |
| Defendants/Counterclaimants. | |

Now before the court is Defendants' motion for leave to file first amended answer and counterclaim.

The court has subject matter jurisdiction over this case under 28 U.S.C. § 1334 and the general order of reference entered by The United States District Court for the Northern District of Ohio on April 4, 2012. Gen. Order 2012-7. The court has authority to enter final orders in this matter. Pursuant to 11 U.S.C. § 1409, venue in this court is proper. The following constitutes the

1

court's findings of fact and conclusions of law under Bankruptcy Rule 7052.

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

## FACTS

Debtor and Defendant R.C. Cook Insurance Agency, Inc. ("RCC") executed an asset purchase agreement ("the APA") on December 1, 2019, where Defendant RCC was to purchase certain assets from Debtor for $536,000. Both defendants, Rodney Cook and RCC, also executed a promissory note for that amount in favor of Debtor. Part of the agreement involved assets that Debtor acquired on October 18, 2018, from Render Insurance, known collectively as the "Render Book of Business" (RBB). As part of the APA, Defendants allege that they agreed to pay $86,000 plus four percent annual interest specifically for the RBB and that Debtor agreed to deliver the RBB free and clear of any liens or encumbrances.

However, the deal unraveled. The exact circumstances are unclear, but sometime between the execution of the APA and April 23, 2020, one or both of the parties breached. Defendants allege that Debtor never fully paid Render Insurance for the RBB, which prompted Randy Render (presumably the owner of Render Insurance) to sue both Debtor and Defendant RCC in state court in September 2020 for breach and to challenge Defendant RCC's ownership of the RBB. Thus, according to Defendants, Debtor breached its duty to deliver the RBB free and clear. On the other hand, Debtor alleges that it fulfilled its duties under the APA and that Defendant RCC breached by not paying the full purchase price. Debtor alleges that $88,605.91 was still outstanding as of June 25, 2021.

Debtor filed a chapter 7 petition on April 8, 2020. On April 23, 2020, Defendants were served with notice of the filing and Debtor included Randy Render and both Defendants as creditors in its schedules. Defendants' counsel first made an appearance in the case shortly thereafter on May 11, 2020. The claims bar date passed on July 22, 2020, without Defendants filing a proof of claim.

Trustee brought this adversary proceeding, seeking a judgment of $88,605.91 and alleging that defendants breached the provisions of the APA and promissory note and unjustly enriched themselves by not paying the full purchase price. Defendants filed their answer and counterclaim on December 13, 2021. The discovery deadline was originally set at April 29, 2022, but was extended to July 1, 2022. After Defendants failed to respond to several requests for admissions, on July 12, 2022, Trustee moved to deem those requests to be admitted. The court then convened a status conference and shortly thereafter Defendants complied with the requests for admissions. The court denied the motion after receiving confirmation that Defendants had sent in answers.

On June 28, 2022, Defendants filed this motion to amend their answer and add counterclaims against Debtor for breach of contract, rescission of contract, fraudulent inducement, and negligent misrepresentation. Trustee filed a response brief and Defendants filed a reply brief. Defendants argue that the court should grant leave to amend because the new

counterclaims are based on the same nucleus of operative facts as the original complaint and allowing an amendment would not prejudice Trustee. Trustee urges the court to deny the motion because the counterclaims arose before the filing of the chapter 7 petition and are therefore barred since the claims bar date has passed. Also, Trustee argues that the motion is the result of undue delay and dilatory motive on behalf of Defendants and will substantially prejudice Trustee by forcing additional expensive discovery. To these critiques, Defendants respond in their reply brief that their claim arose after the petition date when Randy Render sued Debtor and Defendant RCC, which rendered the RBB not free and clear of encumbrances as was promised by Debtor in the APA; the counterclaims should be allowed in after the claims bar date because they are informal claims; and that there would not be significantly more discovery because the counterclaims and complaint shared the same factual basis.

## **DISCUSSION**

This opinion need not address the issue of whether the counterclaims arose before or after the petition date. That issue is a fact-intensive inquiry that is not resolvable from the pleadings currently before the court and may require some discovery to determine when (if ever) Debtor breached the APA and, thus, whether the claim arose pre- or post-petition. The discussion here will focus solely on whether Defendants should be granted leave to amend their complaint.

Federal Rule of Civil Procedure 15, applied to adversary proceedings in bankruptcy by Federal Rule of Bankruptcy Procedure 7015, allows a party to freely amend its pleading one time within twenty-one days after serving it. *See* Fed. R. Civ. P. 15(a)(1)(A). However, if a party wants to amend after the twenty-one-day period, it will need either the consent of the opposing party or leave from the court. *See* Fed. R. Civ. P. 15(a)(2). The rule favors a permissive attitude towards amendments and instructs that "[t]he court should freely give leave when justice so requires." Id. However, "the right to amend is not absolute or automatic." Tucker v. Middleburg-Legacy Place, 539 F.3d 545, 551 (6th Cir. 2008) (citations omitted). The trial court has discretion to grant or deny leave to amend a pleading. *See* Zenith Radio Corp. v. Hazeltine Rsch., Inc., 401 U.S. 321, 330 (1971) (citation omitted). That being said, the court should grant a motion for leave to amend

> "[i]n the absence of any apparent or declared reason [not to]—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."

Foman v. Davis, 371 U.S. 178, 182 (1962).

Here, because more than twenty-one days have passed since Defendants filed their original answer and Trustee has not consented to amendment (as evidenced by her resistance to the motion), Defendants have sought the court's leave to amend. (Trustee's Br. in Opposition to Defs.' Mot. for Leave to File First Am. Answer and Countercls., ECF No. 17; Defs.' Mot. for Leave to File First Am. Answer and Countercls., ECF No. 15; Defs.' Answer to Compl. and Countercl., ECF No. 5.) The court will grant leave if it does not find any of the reasons listed above to deny the motion. Specifically, Trustee proffered undue delay, dilatory motive, and

prejudice to the opposing party as reasons to deny the motion, so that is where the court will focus its analysis.

Undue Delay

Sometimes courts deny leave to amend because a party has waited too long to amend its pleading and has not sufficiently justified the delay. In Church Joint Venture, L.P. v. Blasingame, the Sixth Circuit affirmed a district court's finding of an undue delay where the plaintiff, a purchaser of creditors' judgments, sought to amend its complaint nearly five years after filing the original - and after the matter was set for trial - to include a theory that, because the defendant trust was self-settled, its assets were reachable by a creditor. See Church Joint Venture, L.P. v. Blasingame, 947 F.3d 925, 934 (6th Cir. 2020). However, the plaintiff had known that the trust was self-settled since it filed the original complaint (and even addressed it in the pleadings) but only later realized it could use this legal theory. See id. The court held that failing to recognize an argument was not a sufficient justification for such a lengthy delay. See id. Similarly, in DeGirolamo v. Truck World, Inc., a defendant caused an undue delay by waiting twenty-two months after the original filing to seek leave to amend and raise a new defense. See DeGirolamo v. Truck World, Inc. (In re Laurel Valley Oil Co.), No. 05-64330, 2009 WL 1758741, at *4 (Bankr. N.D. Ohio June 16, 2009). Between the original filing and the motion for leave to amend, the parties had conducted over 5,500 pages of discovery, the discovery deadline had lapsed after numerous extensions, and the defendant had moved for summary judgment. See id. The court denied the defendant's motion for leave to amend when the defendant was unable to explain the delay. See id. In Degolia v. Kenton County, a district court denied an inmate-plaintiff leave to amend his § 1983 complaint a year-and-a-half after the original filing where the inmate-plaintiff provided no explanation for the delay. Degolia v. Kenton Cnty., 381 F. Supp. 3d 740, 755 (E.D. Ky. 2019). A year-and-a-half delay was also undue in Wade v. Knoxville Utilities Board, where the plaintiff could not justify such a delay in amending his employment discrimination lawsuit. See Wade v. Knoxville Utilities Bd., 259 F.3d 452, 459 (6th Cir. 2001).

Trustee argues that Defendants have caused an undue delay because they had the opportunity to bring the claims as early as May 11, 2020, when their counsel first appeared in the chapter 7 case. See (Br. in Opposition 9, ECF No. 17.) Also, they knew of the factual basis for the counterclaims when Randy Render filed suit in state court in September 2020. See (id.) Thus, according to Trustee, Defendants waited over two years to bring these counterclaims and provided no sufficient explanation for why they waited so long.

Trustee's argument falls short. As the cases above illustrate, courts consider an undue delay in the context of the original pleading, i.e., they determine if an unreasonably long time has passed between the original pleading and the motion for leave. They do not look to see if a party could have brought a claim before the original pleading was filed. Here, just over six months passed between Defendants' original answer and their motion for leave to amend. See (Mot. for Leave, ECF No. 15; Answer, ECF No. 5.) This period is substantially less than the delays in the cases discussed above. See Blasingame, 947 F.3d at 934 (five years); Wade, 259 F.3d at 459 (one year and a half); Degolia, 381 F. Supp. 3d at 755 (one year and a half); Laurel Valley Oil, 2009 WL 1758741, at *4 (twenty-two months). While it is true that, like the movants in the above cases, Defendants have not explained their delay in amending, there is little need to with such a

4

short delay. *See* id. The lack of a sufficient explanation was a problem for those movants because they had longer delays that demanded better justifications. *See* id. Thus, Defendants have not unduly delayed the case by waiting a little over six months to amend their answer.

### Dilatory Motive

If the party moving for leave to amend is doing so with the intention of delaying or slowing down the progress of the case or of buying more time, the court may deny the motion. In Truck World, the court found that the movant-defendant was acting with a dilatory motive where it had routinely ignored discovery requests from the plaintiff despite court orders and a motion for sanctions and offered no explanation for waiting a long while to amend its answer to add a defense that it could have asserted in its initial answer. *See* Truck World, 2009 WL 1758741, at *4. Here, Trustee raises similar concerns. She points out that Defendants failed to timely respond to requests for admissions and that they have provided no explanation for not filing the counterclaims earlier, even though they were aware of the counterclaims' factual basis since at least September 2020. *See* (Br. in Opposition 10, ECF No. 17.)

There is little evidence of dilatory motive present here. While Defendants did fail to initially respond to the requests for admissions, they eventually complied after Trustee filed the Motion to Deem. (Resp. to Plaintiff's Mot. to Deem Reqs. For Admis. Admitted, ECF No. 19; Mot. to Deem Reqs. For Admis. Admitted, ECF No. 18.) This is different from the movant in Truck World, who ignored the requests no matter what the court and the other party did, which signaled an intent to delay and obstruct the proceeding. *See* Truck World 2009 WL 1758741, at *4. Because they were less obstinate, Defendants' failure to timely respond to the requests for admissions is not a clear sign of obstructive intent and can just as easily be attributed to error. As for the lack of an explanation, like the discussion of undue delay, an explanation is less needed here than in a case like Truck World, because there is not clear evidence of a dilatory motive that needs explaining. Trustee's allegations of a dilatory motive on the part of Defendants are without merit.

### Prejudice

Though the cases discussed so far have stressed how an undue delay or dilatory motive can lead a court to deny a motion for leave to amend, a delay alone is not enough, and the court must find some prejudice to the opposing party to justify a denial. *See* Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio, 900 F.2d 882, 887–88 (6th Cir. 1990). *See also* Moore v. City of Paducah, 790 F.2d 557, 562 (6th Cir. 1986). In fact, the presence of substantial prejudice to the opposing party is a "critical [factor] in determining whether an amendment should be granted." Hageman v. Signal L. P. Gas, Inc., 486 F.2d 479, 484 (6th Cir. 1973) (citations omitted). A court's analysis of prejudice focuses on "whether the assertion of the new claim or defense would: require the opponent to expend significant additional resources to conduct discovery and prepare for trial; significantly delay the resolution of the dispute; or prevent the plaintiff from bringing a timely action in another jurisdiction." Phelps v. McClellan, 30 F.3d 658, 662–63 (6th Cir. 1994). In Blasingame, the Sixth Circuit affirmed a lower court's finding of prejudice where the plaintiff waited nearly five years to amend its complaint, discovery deadlines had passed, and the matter was set for trial. *See* Blasingame, 947 F.3d at 934. A delay also proved prejudicial in

5

Wade, where the court held that allowing a late (year and a half after filing) amendment to the plaintiff's complaint would substantially prejudice the defendant where the dispositive motion deadline had already passed, over twenty depositions had already been taken (and those deposed would have had to come back for additional questions if the amendment was allowed), and the defendant would have had to develop a new defense and find new medical and expert witnesses. *See* Wade, 259 F.3d at 459-60. In another delay case, the court held that the plaintiff would be prejudiced if the defendant was allowed to amend its answer to add a new affirmative defense because the plaintiff would have had to conduct additional discovery (after a lot already), re-depose certain people, possibly find additional expert testimony, and spend time and money briefing another motion for summary judgment. *See* Truck World, 2009 WL 1758741, at *5. Similarly, the defendants, longshoreman's unions, would have been prejudiced if the plaintiff, a port operator, would have been allowed to amend its Labor Management Relations Act complaint to add a Sherman Act antitrust claim because the parties had already gone through a round of briefing on a prior amendment to the complaint, the plaintiff had had access to all of the necessary evidence for the Sherman Act claim for fifteen months, and defendants would have been required to conduct additional discovery and legal research. *See* Midwest Terminals of Toledo Int'l, Inc. v. Int'l Longshoremen's Ass'n, No. 3:18-CV-2560, 2022 WL 952245, at *9-10 (N.D. Ohio Mar. 30, 2022).

However, the court in Satterwhite v. Ashtabula County Metroparks held that a defendant was not prejudiced where the plaintiff, a former employee, sought to amend her federal employment discrimination complaint to add a pendent state-law claim and add the county as a defendant because the state-law claim came from the same nucleus of operative facts and, thus, would not require more discovery by the defendant and adding the county as a defendant would also not force more discovery. *See* Satterwhite v. Ashtabula Cnty. Metroparks, 514 F. Supp. 3d 1014, 1023 (N.D. Ohio 2021).

According to Trustee, granting Defendants' motion for leave to amend would prejudice her because the counterclaims are "fact-intensive" and "will require the estate to expend significant and unnecessary resources." (Br. in Opposition 11, ECF No. 17.) Trustee laments that she will have to file further motions and conduct additional discovery to fight the counterclaims and that, as a result, general unsecured creditors will lose out on money from the estate that they would have otherwise received. (Id.) Defendants counter by arguing that adding the counterclaims would not prejudice Trustee because they are based on the same facts about the same transaction as Trustee's claims, the proceeding is less than a year old, and discovery was still open when the motion for leave to amend was filed. (Defendants' Reply Br. ¶ 28, ECF No. 22; Defendants' Motion for Leave to File First Amended Complaint ¶¶ 13, 14, ECF No. 15.) As for the impact on other claims, Defendants argue that claims are still being determined and that there are other contested claims in the case, including that of the largest creditor. (Defendants' Reply Br. ¶29, ECF No. 22.)

Trustee would not be substantially prejudiced by granting Defendants leave to amend their answer and counterclaims. Just like the additional claims added by amendment in Satterwhite, here the counterclaims are based on the same nucleus of operative facts as the complaint: botched APA. (Mot. for Leave Ex. A, ECF No. 15; Compl. 2-3, ECF No. 1.) Since the counterclaims are based upon the same facts as the original claims, there should not need to

be significant further discovery. Trustee failed to substantiate or state with any specificity what additional discovery would be required and how much it would cost. This lack of specificity also clouds Trustee's arguments about unsecured creditors losing estate money. Because the further discovery will likely not be significant (and thus not too expensive), it is unlikely that unsecured creditors will suffer significantly. Further, this case is quite different from the above cases where courts found substantial prejudice. First, as discussed earlier, unlike in <u>Blasingame</u>, <u>Wade</u>, and <u>Truck World</u>, there was no significant delay between the original answer and the motion for leave here. *See* <u>Blasingame</u>, 947 F.3d at 934; <u>Wade</u>, 259 F.3d at 459-60; <u>Truck World</u>, 2009 WL 1758741, at *5. <u>Wade</u> and <u>Truck World</u> can be further distinguished from this case because here the dispositive motion deadline has not passed and granting the motion for leave to amend would not lead to a new need for expert testimony. *See* <u>Wade</u>, 259 F.3d at 459-60; <u>Truck World</u>, 2009 WL 1758741, at *5. Lastly, unlike in <u>Midwest Terminals</u>, here there have been no prior amendments and the need for additional discovery would be less acute. *See* <u>Midwest Terminals</u>, 2022 WL 952245, at *9-10. It follows, then, that because the counterclaims are based on the same nucleus of operative facts as the original complaint, Trustee will only be minimally prejudiced because there will not be a significant amount of new discovery required.

## **CONCLUSION**

Defendants are entitled to leave to file a first amended answer and counterclaim. The six months between the filing of the original answer and the motion for leave is not an undue delay. Further, there is no evidence that Defendants have acted with a dilatory motive during this adversary proceeding. Lastly, Trustee has failed to show that she would be substantially prejudiced if leave were granted because it is not clear that there would be significant new discovery costs since the counterclaims are based on the same facts and information as the original claims in the complaint. Defendants' motion is granted, and an order will be entered immediately.

# # #

**Service List**

Anne Piero Silagy
1225 S. Main Street, Suite 1
North Canton, OH 44720

John J. Rutter
Roetzel & Andress, LPA
222 S. Main Street
Akron, OH 44308

Rodney A. Cook
R.C. Cook Insurance Agency, Inc.
504 E. Main Street
Ravenna, OH 44266

Michael A. Steel
2725 Abington Road, Suite 200A
Akron, OH 44333

Alex J. McCallion
Brennan, Manna & Diamond, LLC
75 E. Market Street
Akron, OH 44702

Mathew E. Doney
Brennan, Manna & Diamond, LLC
200 Public Square, Suite 3270
Cleveland, OH 44114-2315